1  JULIE A. TOTTEN (STATE BAR NO. 166470)
   jatotten@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   400 Capitol Mall, Suite 3000
3  Sacramento, CA 95814-4497
   Telephone:    +1-916-447-9200
4  Facsimile:    +1-916-329-4900

5  MICHAEL D. WEIL (STATE BAR NO. 209056)
   mweil@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
7  405 Howard Street
   San Francisco, CA  94105-2669
8  Telephone:    +1-415-773-5700
   Facsimile:    +1-415-773-5759
9
   Attorneys for Defendants
10 INSTITUTIONAL TRADING CORPORATION (erroneously
   sued as "Institutional Trading Company") and IT.COM
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                SAN FRANCISCO DIVISION

15

16 KWONG YUNG,                          Case No.  07-CV-5949

17            Plaintiff,                **DEFENDANTS' NOTICE OF
                                        MOTION AND MOTION TO
18      v.                              DISMISS FOR LACK OF PERSONAL
                                        JURISDICTION PURSUANT TO
19 INSTITUTIONAL TRADING COMPANY, a     F.R.C.P. 12(B)(2); MEMORANDUM
   corporation, IT.COM, a corporation, DOES 1   OF POINTS AND AUTHORITIES IN
20 to 10,                               SUPPORT THEREOF**

21            Defendant.

22                                      Date:       February 22, 2008
                                        Time:       10:00 a.m.
23                                      Courtroom: 1, 17th Floor
                                        Judge:      Honorable Samuel Conti

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..............................................1

II.   STATEMENT OF FACTS .........................................................................................3

    A.    ITC and IT.com Have No Presence In California ...................................3

    B.    IT.com's CEO, Mark Cordover, Offered Plaintiff A Job And Negotiated The Key Terms Of His Employment While Both Were In Washington, D.C. ..........................................................................................................4

    C.    Plaintiff Worked and Resided in Washington, D.C. Throughout His Employment With IT.com ....................................................................5

    D.    During His Employment, Plaintiff's Contacts With California Were Rare And Had No Connection To This Lawsuit ...................................................6

    E.    Plaintiff Was Terminated In Washington, D.C .......................................6

    F.    The California Division of Labor Standards Enforcement Dismissed Plaintiff's Charge For Lack of Personal Jurisdiction............................6

    G.    Despite The Labor Commissioner's Ruling, Plaintiff Initiated the Present Lawsuit in California State Court ..................................................7

III.  ARGUMENT ............................................................................................................7

    A.    This Court Does Not Have General Personal Jurisdiction Over Defendants..........8

        1.    ITC has no contacts with California.........................................................8

        2.    IT.com has only minor and infrequent contacts with California that do not justify taking general jurisdiction over it .................................9

    B.    This Court Does Not Have Specific Personal Jurisdiction Over Defendants .......10

        1.    Plaintiff's contract claim........................................................................10

        2.    Plaintiff's tort claims have no connection to California..........................15

        3.    Plaintiff's claim for unpaid wages has no connection to California ........17

    C.    In the Alternative, This Case Should be Transferred to the District of Columbia ..............................................................................................18

        1.    Plaintiff's choice of forum has no weight...............................................18

        2.    Washington, D.C. is more convenient for the parties and witnesses .......19

        3.    The Northern District of California Has No Interest in These Claims ...............................................................................................20

        4.    Judicial Economy Favors Transfer of Venue...........................................20

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Boyd v. Snyder*,
   44 F. Supp. 2d 966 (N.D. Ill. 1999)............................................................................7

4

*Brand v. Menlove Dodge*,
   795 F.2d 1070 (9th Cir. 1986)...............................................................................3, 5

5

6

*Bury v. Northern Outfitters, LLC*,
   No. 06-3081, 2007 WL. 1431958 (D. Or. May 14. 2007)..........................................6, 7

7

*Flores v. Zale Delaware, Inc.*,
   No. C07-0539, 2007 WL. 4462992 (N.D. Cal. Dec. 17, 2007) ........................................7

8

9

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002)................................................................................4, 5

10

*Helicopteros Nacionales de Colombia v. Hall*,
   466 U.S. 408 (1984) ..............................................................................................4

11

12

*Hunt v. Erie Insurance Group*,
   728 F.2d 1244 (9th Cir. 1984).....................................................................................5

13

*Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*,
   700 F.2d 1026 (5th Cir. 1983).....................................................................................2

14

15

*International Shoe Co. v. Washington*, ,
   326 U.S. 310 (1945) ................................................................................................3

16

*Johnston v. Frank E. Basil, Inc.*,
   802 F.2d 418 (11th Cir. 1986)....................................................................................7

17

18

*Katerndahl v.  Brindenburg Securities*,
   No. C-96-2314, 1996 WL. 743800 (N.D. Cal Dec. 9, 1996)................................1, 3, 7

19

*Markey v. Kudelski S.A.*,
   No. 06-CF-1300, 2007 WL. 1110787 (S.D. Cal. April 3, 2007) ......................................1

20

*Maxtor Corp. v. Read-Rite (Thailand) Co., Ltd.*,
   No. C-03-3064, 2003 WL. 24902406 (N.D. Cal. Dec. 4, 2003)......................................6

21

22

*McGlinchy v. Shell Chemical Co.*,
   845 F.2d 802 (9th Cir. 1988)......................................................................................1

23

*Peterson v. Kennedy*,
   771 F.2d 1244 (9th Cir. 1985).....................................................................................1

24

25

*Saleh v. Titan Corp.*,
   361 F. Supp. 2d 1152 (S.D. Cal. 2005)......................................................................7, 8

26

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)...............................................................................4, 5, 6

27

28

*U.S. Vestor, LLC v. Biodata Information Tech. AG,*
    290 F. Supp. 2d 1057 (N.D. Cal. 2003)..................................................................2

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006)..................................................................2, 3, 4, 6

**CODES AND STATUTES**

28 U.S.C. § 1404(a) ..................................................................1, 3, 7, 9

28 U.S.C. § 1441(a) ..................................................................3

California Code of Civil Procedure
    § 410.10..................................................................3
    § 415.40..................................................................3

California Labor Code § 98 ..................................................................2, 3, 6

Federal Rule of Civil Procedure
    12(b)(2)..................................................................1, 2, 3
    4(k)(1)(A) ..................................................................3

**MISCELLANEOUS**

Restatement (Second) of Torts § 220A-223 (1965)..................................................................5

OHS West:260357935.5

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO OF P&AS IN SUPPORT THEREOF
CASE No. 07-CV-5949

1

**NOTICE OF MOTION AND MOTION**

2

**TO PLAINTIFF KWONG YUNG AND HIS ATTORNEYS OF RECORD:**

3

   PLEASE TAKE NOTICE THAT on February 22, 2008, at 10:00 a.m., or as soon as this

4

matter may be heard, in the courtroom of the Honorable Samuel Conti, United States District

5

Court, 450 Golden Gate Avenue, San Francisco, CA 94192, defendants Institutional Trading

6

Company and IT.com, will move the Court for an Order dismissing with prejudice Plaintiff

7

Kwong Yung's Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the

8

Federal Rules of Civil Procedure.  In the alternative, Defendants seek to transfer venue of this

9

action to the United States District Court for the District of Columbia, pursuant to 28 U.S.C. §

10

1404(a).  This motion is based on the Notice of Motion and Motion, the supporting Memorandum

11

of Points and Authorities, the Proposed Order, the declarations of Mark A. Cordover and Michael

12

D. Weil, the papers on file in this matter, and such other evidence and argument as the Court

13

permits to be heard in this matter.

14

15

16

**MEMORANDUM OF POINTS AND AUTHORITIES**

17

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

18

   Defendants Institutional Trading Corporation ("ITC") and IT.com (collectively

19

"Defendants"), hereby move pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss

20

Plaintiff Kwon Yung's ("Plaintiff") lawsuit for lack of personal jurisdiction.  Plaintiff alleges four

21

claims against Defendants all arising out his employment with defendant IT.com in Washington,

22

D.C.:  (1) breach of written agreement, whereby Defendants allegedly promised to employ

23

Plaintiff for three years, but terminated him without cause; (2) unpaid wages for the month of

24

December 2006; (3) conversion of a laptop computer that Plaintiff claims belonged to him; and

25

(4) fraud relating to Defendants' alleged promise to employ Plaintiff for three years.

26

   None of the events or evidence in this case have any connection to California, as all are

27

centered around the Washington, D.C. area.  For example:

28

   • Defendants are Washington, D.C. corporations that do not conduct any business in

1   California;

2   •   Mark Cordover, defendant IT.com's Chief Executive Officer, offered Plaintiff a job while

3       both were in Washington, D.C. (defendant ITC never employed Plaintiff);

4   •   Mr. Cordover and Plaintiff negotiated the key terms of Plaintiff's agreement while both

5       were in Washington, D.C.;

6   •   IT.com and Plaintiff intended for Plaintiff to perform his duties for IT.com in Washington,

7       D.C.;

8   •   Plaintiff was employed in Washington, D.C. during the entire term of his employment

9       with IT.com and, in fact, performed his duties in Washington, D.C.;

10  •   Plaintiff resided in the State of Virginia during the entire term of his employment with

11      IT.com;

12  •   The decision to terminate Plaintiff's employment occurred in Washington, D.C.;

13  •   IT.com actually terminated Plaintiff's employment while he was in Washington, D.C.; and

14  •   At all times relevant, the laptop that Defendants allegedly converted was in Washington,

15      D.C.

16      California's only connection to this case is that is where Plaintiff resided before his job

17  with IT.com and that is where he resides today.  This falls far short of satisfying the constitutional

18  protections of the due process clause in order to establish personal jurisdiction over an out-of-

19  state defendant.  Plaintiff improperly brought this lawsuit in San Francisco for his own

20  convenience, nothing more.  Accordingly, this Court should dismiss this case with prejudice.

21      In fact, on February 16, 2007, Plaintiff attempted to assert the same claims as in this

22  lawsuit in an administrative charge filed with the California Labor Commissioner at the Division

23  of Labor Standards Enforcement.  However, on March 20, 2007, the Labor Commissioner

24  dismissed Plaintiff's administrative charge for lack of personal jurisdiction:

25          Mr. Yung does not have a sufficient basis to claim the protections
            of California law and should look to the state of Virginia or the
26          District of Columbia for assistance in resolving this dispute.

27  *See* Declaration of Mark Cordover in Support ("Cordover Dec."), Exs. J & K.  This Court should

28  likewise dismiss this lawsuit.

OHS West:260357935.5

- 2 -

1    In the alternative, the Court should transfer the venue in this action to the United States

2    District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a).  California has no

3    meaningful connection to this action and is not the proper forum to resolve it.

4    Defendants informally attempted to resolve the personal jurisdiction issue without motion

5    practice by asking Plaintiff to dismiss this California action and re-file in Washington, D.C.,

6    where this case belongs.  Plaintiff refused, so Defendants were left with no choice but to file this

7    motion.

8    **II.    STATEMENT OF FACTS**

9    As demonstrated by the following facts, none of Plaintiff's claims belong in California

10   because (a) this Court does not have general jurisdiction over defendants, (b) Defendants did not

11   purposefully avail themselves of the benefits of California, and (c) none of Plaintiff's causes of

12   action arise out of Defendants' conduct with California.

13   **A.    ITC and IT.com Have No Presence In California.**

14   ITC is a privately held corporation, which was incorporated in the District of Columbia on

15   October 27, 1983.  Cordover Dec. ¶ 3.  ITC has its principal place of business in the District of

16   Columbia.  *Id*., ¶ 3.  ITC has no offices in California.  *Id*.  ITC does not have an agent for service

17   of process in California.  *Id*.  ITC does not lease or own real property in California.  *Id*.  ITC does

18   not have any bank accounts in California.  *Id*.  ITC has no employees or officers residing in

19   California.  *Id*.  ITC does not conduct any directors' meetings or other corporate activity in

20   California.  *Id*.  At no time has ITC conducted business in California nor is ITC licensed to

21   conduct business in California.  *Id*.  ITC has no clients in California nor does it have contracts

22   with any California individual or entities.  *Id*.  ITC does not advertise in California.  *Id*.  ITC does

23   not have a Web site accessible to California residents.  *Id*.  ITC does not have a telephone within

24   California.  *Id*.  ITC is not, and has never been, engaged in any litigation in California besides the

25   instant matter brought by Plaintiff and his related claim brought before the California Labor

26   Commissioner.  *Id*.  ITC does not employ anyone, and did not employ anyone during Plaintiff's

27   tenure, including Plaintiff.  *Id*.

28

- 3 -

1    Like ITC, IT.com was incorporated in the District of Columbia on November 30, 2005.[1]

2    *Id.*, ¶ 5.  IT.com maintains its principal place of business in the District of Columbia.  *Id.*, ¶ 5.

3    IT.com is a vertical search engine company that helps technology buyers find the best solutions

4    available on the Web—objectively and comprehensively.  *Id.*  IT.com is not authorized to do

5    business in California.  *Id.*  IT.com has no offices in California.  *Id.*  IT.com does not lease or own

6    real property in California.  *Id.*  IT.com has no bank accounts in California.  *Id.*  IT.com has no

7    employees or officers residing in California.  *Id.*  IT.com does not have a telephone within

8    California.  *Id.*  IT.com does not advertise in California.  *Id.*  IT.com is not, and has never been,

9    engaged in any litigation in California besides the instant matter brought by Plaintiff and his

10   related claim brought before the California Labor Commissioner.  *Id.*  IT.com has no current

11   customers in California and has never had any customers in California.  *Id.*  IT.com has solicited

12   only three to four different entities in California to provide IT.com services, but has been

13   unsuccessful.  *Id.*

14   **B.    IT.com's CEO, Mark Cordover, Offered Plaintiff A Job And Negotiated The Key Terms Of His Employment While Both Were In Washington, D.C.**

15

16         Plaintiff sought employment with IT.com when he responded to a job posting for a senior

17   scientist IT.com had placed exclusively on the Washington, D.C. site of Craig's List.  *Id.*, ¶ 7.

18   The ad could only be accessed through http://washingtondc.craigslist.org/.  *Id.*  Mark Cordover,

19   IT.com's CEO, conducted a screening interview with Plaintiff over the phone while Cordover

20   was in his office in Washington, D.C. and Plaintiff was in California.  *Id.* at ¶ 8.  Plaintiff then

21   flew to Washington, D.C. for a formal interview with Mr. Cordover, which took place on or about

22   November 11, 2005.  *Id.*

23         During the formal interview, Mr. Cordover offered Plaintiff a position with IT.com,

24   Plaintiff accepted, and they agreed to all of the key terms of his employment on that day.  *Id.*

25   Over the next few weeks, Plaintiff and Mr. Cordover memorialized Plaintiff's employment terms

26   with IT.com through a couple of emails.  *Id.*  Mr. Cordover was in Washington, D.C. at all times

27   during these few weeks.  *Id.*  In particular, from his office in Washington, D.C., Mr. Cordover

28

---

[1] In late 2005, ITC transferred its trademark rights and other intellectual property to defendant IT.com.  *Id.*, ¶ 4.  ITC retained ownership of the domain name it.com.  *Id.*  That is the only relationship between ITC and IT.com.

sent Plaintiff an email on November 26, 2005 memorializing the terms of Plaintiff's employment with IT.com. *Id*. at ¶ 9. The email provided that Plaintiff was to begin work with IT.com on December 1, 2005, and that IT.com would pay for some of the expenses Plaintiff incurred in relocating to Washington, D.C. *Id*. at ¶ 10. In addition, the agreement provided that IT.com would pay Plaintiff for three business trips to California during 2006. *Id*.

### C.    Plaintiff Worked and Resided in Washington, D.C. Throughout His Employment With IT.com.

Plaintiff worked and resided in Washington, D.C. throughout his employment with IT.com. *Id*. at ¶¶ 11-17. On his first day of work – December 1, 2005 – Plaintiff reported to IT.com's offices in Washington, D.C. *Id*. at ¶ 17. On this same day, Plaintiff and IT.com entered into a Restricted Stock Agreement. *Id*. at ¶ 11. While Plaintiff may contend that he had a three-year employment contract with IT.com., the Stock Agreement provides, among other things, that in the absence "of an employment agreement, or of a provision in such an agreement to the contrary, Participant acknowledges that he is an employee at will." *Id*., Ex. C, ¶ 5. The Stock Agreement also includes a provision that it shall be construed according to the laws of the District of Columbia. *Id*. at Ex. C, ¶ 12.

Also on his first day of work, Plaintiff filled out and signed an Employment Eligibility Verification Form, listing his address as Fairfax, Virginia. *Id*., Ex. D. A week or so later, Plaintiff completed and signed a Form W-4 on which he also listed his address as Fairfax, Virginia. *Id*, Ex. E. Throughout Plaintiff's employment, IT.com paid Virginia Income Tax Withholding for his wages and sent Plaintiff's W-2 forms to his Fairfax, Virginia address. *Id*. ¶ 14 and Ex. F. As part of his claim, Plaintiff alleges that IT.com failed to reimburse him for alleged business trips he had taken. When he sought reimbursement from IT.com, Plaintiff attached the reservation confirmation for two of the flights he allegedly took for business. Both confirmations list Plaintiff's billing address as Fairfax, Virginia. *Id*., Exs. G, H.

Moreover, Plaintiff's office was located next door to Mr. Cordover's office, and Mr. Cordover personally observed Plaintiff working in his office in Washington, D.C., throughout his employment. *Id*., ¶ 15. On many occasions, including weekends, Mr. Cordover drove Plaintiff

OHS West:260357935.5

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO OF P&AS IN SUPPORT THEREOF
CASE NO. 07-CV-5949

from IT.com's offices in Washington, D.C. to Plaintiff's home in Fairfax, Virginia. *Id.*, ¶ 13. In addition, on at least 20 occasions, Plaintiff joined Mr. Cordover for lunch while they were both working in the office on a Saturday. *Id.*, ¶ 15. Plaintiff even thought of himself as residing in Washington, D.C. when he sent an email to another individual describing himself as "the chief scientist of a small startup company in D.C., *my hometown*." *Id.*, Ex. I (emphasis added).

### D. During His Employment, Plaintiff's Contacts With California Were Rare And Had No Connection To This Lawsuit.

Plaintiff's employment with IT.com had virtually nothing to do with anyone or anything in California. *Id.*, ¶ 18. Rather, the majority of his business contacts were with persons in the Washington, D.C. area. *Id.*, ¶ 20. Plaintiff made one business trip to California while he was employed with IT.com and that was when he accompanied Mr. Cordover to a continuing learning and research conference held at Stanford University. *Id.*, ¶ 18. On another occasion, Plaintiff was in California on what he claimed was a business trip, but the purpose of his trip turned out to be unrelated to IT.com. During this trip, Mr. Cordover asked Plaintiff to go to a "get-to-know-you" meeting with a member of IT.com's advisory board, who resides in the Bay Area. *Id.* While Plaintiff may claim he made multiple trips to California on behalf of IT.com, none of these were trips authorized by the company. *Id.*

### E. Plaintiff Was Terminated In Washington, D.C.

IT.com terminated Plaintiff's employment on December 12, 2006 for poor performance, unauthorized absences, and insubordination. *Id.*, ¶ 21. Mr. Cordover fired Plaintiff while Plaintiff was in IT.com's offices in Washington, D.C. *Id.* In fact, Mr. Cordover had to call the District of Columbia police to escort Plaintiff out of the office because Plaintiff refused to leave after repeated demands that he do so. *Id.* When Plaintiff was fired, IT.com took back the laptop computer that IT.com owned, but issued to Plaintiff to carry out his job duties during the course of his employment with IT.com. *Id.*, ¶ 24.

### F. The California Division of Labor Standards Enforcement Dismissed Plaintiff's Charge For Lack of Personal Jurisdiction.

On February 16, 2007, Plaintiff filed a claim, pursuant to California Labor Code section 98, with the Labor Commissioner of the State of California in the San Jose office for the Division

1   of Labor Standards Enforcement. *Id.*, Ex. J. Plaintiff's claim contained many of the same

2   allegations that appear in this case: (1) alleged unpaid wages and (2) alleged unpaid business

3   expenses for alleged business trips to California. *Id.* On March 20, 2007, the Labor

4   Commissioner issued its Notice – Investigation Completed, dismissing Plaintiff's complaint for

5   lack of jurisdiction. *Id.*, Ex. K. The Labor Commissioner found that the evidence provided by

6   Plaintiff and IT.com, including the evidence listed above, "clearly showed Plaintiff was a resident

7   of Virginia in 2006" and that Plaintiff's work in California "was limited to irregular business or

8   recruiting trips, and it did not establish the type of presence in the state to provide Plaintiff the

9   protections of California law." *Id.* The Labor Commissioner concluded that "<u>Plaintiff does not

10  have a sufficient basis to claim the protections of California law and should look to the state of

11  Virginia or the District of Columbia for assistance in resolving this dispute.</u>" *Id.* (emphasis

12  added).

13      **G.    Despite The Labor Commissioner's Ruling, Plaintiff Initiated the Present
            Lawsuit in California State Court**

14
15          On or about September 28, 2007, Plaintiff filed a complaint in this action in the Superior

16  Court of California for the City and County of San Francisco. On October 15, 2007, Plaintiff

17  served the complaint via registered mail pursuant to California Code of Civil Procedure section

18  415.40. On November 26, 2007, Defendants timely removed the case to this court pursuant to 28

19  U.S.C. § 1441(a).

20  **III.    ARGUMENT**

21          Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants hereby move to dismiss

22  this case for lack of personal jurisdiction. The constitutional protections of the due process clause

23  require that jurisdiction not be exercised over a nonresident defendant unless the defendant has at

24  least "minimum contacts" with the state such that the exercise of jurisdiction "does not offend

25  traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*,

26  326 U.S. 310, 316 (1945).[2] The focus of the inquiry is whether the defendant's conduct and

----

[2] Where there is no federal statute governing personal jurisdiction, as in this case, the applicable law is the law of the
27  state in which the court sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et
    L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). California's long-arm jurisdictional statute is coextensive
28  with federal due process requirements, accordingly, the jurisdictional analysis under state law and federal due process

1   connection with the forum state is such that the defendant, "should reasonably anticipate being

2   haled into court there." *Id.*

3       Personal jurisdiction can be found in two ways: general jurisdiction or specific

4   jurisdiction. Under either approach, Plaintiff bears the burden in establishing that this Court has

5   jurisdiction over Defendants. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800

6   (9th Cir. 2004). Plaintiff cannot prove either.

7       **A.    This Court Does Not Have General Personal Jurisdiction Over Defendants.**

8       Defendants are not subject to general jurisdiction in California because their infrequent

9   and minor contacts with California fall well short of the rigorous requirements for establishing

10  general jurisdiction over a party. The standard for establishing general jurisdiction is an

11  "exacting" one. *See Schwarzenegger*, 374 F.3d at 801. General jurisdiction exists where the

12  defendant engages in "substantial" or "continuous and systematic general business contacts that

13  approximate physical presence in the forum state." *Id.* (internal citations omitted).

14      **1.    ITC has no contacts with California.**

15      Plaintiff cannot show that defendant ITC has engaged in "substantial" or "continuous and

16  systematic" contact with California to the level that approximates its physical presence in the

17  state. To the contrary, ITC's contacts with California are non-existent. Cordover Dec., ¶ 3. ITC

18  is a privately held corporation, which was incorporated in the District of Columbia over 24 years

19  ago. *Id.* Its principal place of business is in the District of Columbia. *Id.* ITC has no offices in

20  California and it does not have an agent for service of process in California. *Id.* ITC does not

21  lease or own real property in California, nor does it have any bank accounts in the state. *Id.* ITC

22  has no employees residing in California. *Id.* ITC's non-existent contacts with California do not

23  meet the "exacting" standard necessary in order to give rise to general personal jurisdiction in

24  California. *See, e.g., Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984) (no

25  general jurisdiction over foreign corporation that sent officer to forum for one negotiating session,

26  accepted checks drawn on a forum bank, purchased equipment from the forum, and sent

27  personnel to the forum to be trained); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain*

28

are the same. *See* Cal. Civ. Proc. Code § 410.10; *Yahoo! Inc.*, 433 F.3d at 1205.

1  *Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002) (no general jurisdiction where defendant did not own

2  property in California, did not keep bank accounts or have employees in California, and did not

3  designate an agent for service of process in California).

### 2.    IT.com has only minor and infrequent contacts with California that do not justify taking general jurisdiction over it.

Similarly, defendant IT.com's contacts with California fall well short of "continuous and

systematic" contacts.  Like ITC, IT.com is incorporated in the District of Columbia and is not

authorized to do business in California.  Cordover Dec., ¶ 5.  It has no offices in California.  *Id.*  It

does not lease or own real property in California.  *Id*.  IT.com has no bank accounts in California.

*Id*  It has no employees or officers residing in California.  *Id*  It does not have a telephone within

California.  *Id*  IT.com does not advertise in California.  *Id*  IT.com does not have and has never

had any customers located in California.  *Id*  IT.com's contacts with California amount to four

unsuccessful attempts at enlisting California customers, and the presence of IT.com's employees

at a research conference held in California.  *Id*.  At most, these contacts constitute attempting to

or actually "doing business *with* California, but do not constitute doing business *in* California."

*Glencore Grain Rotterdam B.V.*, 284 F.3d at 1125 (no general jurisdiction where defendant

exported considerable rice through the Port of San Francisco).  Indeed, "engaging in commerce

with residents of the forum state is not in and of itself the kind of activity that approximates

physical presence within the state's borders."  *Id.*

In sum, IT.com's contacts with California do not rise to the level that would cause it to

reasonably anticipate being haled into court in California.  *See, e.g., Schwarzenegger*, 374 F.3d at

801 (no general jurisdiction where defendant regularly retains the services of a California-based

direct marketing company; has hired a sales training company, incorporated in California, for

consulting services; and maintains and Internet website accessible by anyone capable of using the

Internet); *Brand v. Menlove Dodge*, 795 F.2d 1070,  1073 (9th Cir. 1986) (no general jurisdiction

where defendant occasionally sold cars to California residents and to a dealer with knowledge

that the dealer occasionally resold them in California, including knowing the car at issue in the

litigation would be resold in California).  Accordingly, this Court does not have general personal

OHS West:260357935.5

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO OF P&AS IN SUPPORT THEREOF
CASE NO.  07-CV-5949

1    jurisdiction over defendant IT.com.

2        **B.    This Court Does Not Have Specific Personal Jurisdiction Over Defendants.**

3        Defendants are also not subject to specific jurisdiction in California. Specific jurisdiction

4    is "based on the relationship between the defendant's forum contacts and the plaintiff's claim."

5    *Yahoo! Inc.*, 433 F. 3d at 1205. It is analyzed according to a three prong test:

6            (1) The non-resident defendant must purposefully direct his
             activities or consummate some transaction with the forum or
7            resident thereof; or perform some act by which he purposefully
             avails himself of the privilege of conducting activities in the forum,
8            thereby invoking the benefits and protections of its laws;

9            (2) the claim must be one which arises out of or relates to the
             defendant's forum-related activities; and
10

11           (3) the exercise of jurisdiction must comport with fair play and
             substantial justice, *i.e.* it must be reasonable.

12   *Id*. at 1205-06. Plaintiff has the burden of satisfying the first two prongs of the test. *See*

13   *Schwarzenegger*, 374 F.3d at 802. If the plaintiff fails "to satisfy either of these prongs, personal

14   jurisdiction is not established in the forum state." *Id*.

15       Here, all of Plaintiff's claims arise out of his employment with IT.com, which took place

16   exclusively in Washington, D.C. Plaintiff cannot proffer sufficient facts to establish that

17   California has specific jurisdiction over any of the claims he asserts against Defendants.

18       **1.    Plaintiff's contract claim**

19           **a.    Defendants did not purposefully avail themselves of California.**

20       Plaintiff's First Cause of Action for Breach of Written Contract alleges that he had an

21   agreement with Defendants for a three-year term of employment and that Defendants breached

22   the agreement by prematurely terminating his employment without cause. Complaint, ¶ I.

23       In suits involving contracts, a "purposeful availment" analysis is often used.

24   *Schwarzenegger*, 374 F.3d. at 802. Purposeful availment can be inferred "based on where the

25   contract was negotiated, where the contract was executed, and where the contract was to be

26   performed." *Maxtor Corp. v. Read-Rite (Thailand) Co., Ltd.*, No. C-03-3064, 2003 WL

27   24902406, at * 6 (N.D. Cal. Dec. 4, 2003). In this case, Defendants did not purposefully avail

28   themselves of California because Plaintiff's employment with IT.Com was negotiated in

OHS West:260357935.5                            - 10 -

Washington, D.C., he was offered employment while he was in Washington D.C., any agreement was executed in Washington, D.C., and his employment was exclusively performed in Washington, D.C.

**(1)    Negotiations and final agreements all occurred in Washington, D.C.**

IT.com (through its CEO, Mark Cordover) offered Plaintiff a position for employment while Plaintiff was in Washington D.C.  Cordover Dec., ¶ 8.  All of the negotiations between Cordover and Plaintiff regarding the key terms of his employment took place in Washington, D.C.  Cordover Dec., ¶ 8.  At no point during the negotiations did Cordover ever set foot in California.  *Id.*

In addition, on his first day of work – December 1, 2005 – Plaintiff and IT.com entered into a Restricted Stock Agreement.  *Id.* at ¶ 11.  While Plaintiff may contend in his First Cause of Action that IT.com breached an agreement to employ Plaintiff for a three-year term, the Stock Agreement provides, among other things, that in the absence "of an employment agreement, or of a provision in such an agreement to the contrary, Participant acknowledges that he is an employee at will."  *Id.*, Ex. C, ¶ 5.  The Stock Agreement was entered into in Washington, D.C. and includes a provision that it shall be construed according to the laws of the District of Columbia.  *Id.* at Ex. C, ¶ 12.

Plaintiff may argue that he initiated contact with IT.com when he responded to a job posting on http://washingtondc.craigslist.org.  Cordover Dec., ¶ 7.  But, that is not enough to establish specific jurisdiction.  *See Johnston v. Frank E. Basil, Inc.*, 802 F.2d 418, 420 (11th Cir. 1986) (defendant's placement of employment advertisement in an Alabama newspaper for employment outside the forum did not qualify as purposeful availment); *Katerndahl v. Brindenburg Securities*, No. C-96-2314, 1996 WL 743800, at *4 (N.D. Cal Dec. 9, 1996) (defendants advertisement in a trade journal circulated in California for a job outside of California did not constitute purposeful availment).  Indeed, IT.com's advertisement was not focused on California but was placed only in the Washington, D.C. section of Craigslist.org.   Even if the advertisement had been focused at California, employment advertisements alone do not rise to the

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO OF P&AS IN SUPPORT THEREOF
CASE NO.  07-CV-5949

1    level of purposeful availment.  *Id.*

2        To the extent that Plaintiff attempts to argue that any negotiations may have occurred over

3    the phone while he was in California, that is still insufficient to justify personal jurisdiction over

4    the Defendants.  *See Markey v. Kudelski S.A.*, No. 06-CF-1300, 2007 WL 1110787, at *4 (S.D.

5    Cal. April 3, 2007) ("Use of the mails, the telephone . . . or other international communications

6    simply do not qualify as purposeful activity invoking the benefits and protections of the forum

7    states." quoting *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)); *see Katerndahl*, 1996

8    WL 743800, at *4 (negotiations of the employment contract that took place on the phone while

9    the plaintiff was in California and in person in New York and Denmark did not create personal

10   jurisdiction); *see also McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988)

11   (execution of contract in California insufficient where substance of the relationship formed in

12   England).

13       In sum, IT.com's actions in interviewing and negotiating with Plaintiff in Washington,

14   D.C., for a job to be performed in Washington, D.C. simply do not rise to the level or purposeful

15   availment.  *See Markey*, No. 06-CF-1300, 2007 WL 1110787, at *4 (refusing to exercise

16   jurisdiction over the defendant out-of-state employer even though the defendant made an

17   employment offer to plaintiff during negotiations while plaintiff was present in California).

18                   **(2)    The course and scope of Plaintiff's employment
                              occurred in Washington, D.C.**
19
20       A litany of evidence demonstrates that the parties intended the course and scope of

21   Plaintiff's employment to occur in Washington, D.C., and, in fact, Plaintiff performed his duties

22   exclusively in Washington, D.C.  *See supra*, II.A-G.  Indeed, evidence submitted by Defendants

23   in support of this motion contains a substantial number of admissions by Plaintiff regarding the

24   location of his employment with IT.com.  For example, in Plaintiff's email correspondence with

25   an employee of another company, Plaintiff states that "I am the chief scientist of a small startup

26   company in DC, *my hometown*."  *Id.*, Ex. I (emphasis added).  Defendants have also submitted

27   several tax and other official documents wherein Plaintiff admits that he resides and is employed

28   in the Washington, D.C. area.  Cordover Dec., Exs. D-I.

1    In fact, Plaintiff's own complaint is internally inconsistent and, by implication, admits that

2  Plaintiff worked and resided in the Washington, D.C. area during his employment with IT.com.

3  On the one hand, Plaintiff alleges that he was a resident of California "at all times mentioned"

4  within the complaint and that the employment agreement he had with IT.com "was to be

5  performed in the City and County of San Francisco."  Complaint ¶ I.  On the other hand, Plaintiff

6  alleges that he was promised "reimbursement for his travel and related expenses for three

7  business trips to San Francisco per year" and seeks through this action reimbursement for travel

8  expenses incurred traveling from Washington, D.C.  *Id.* ¶ IV, V.  How can Plaintiff claim that he

9  was employed exclusively in California when he seeks reimbursement for alleged business travel

10  to California?  That makes no sense.  Indeed, given the substantial evidence that Plaintiff resided

11  and worked outside of California, Defendants believe that Plaintiff knew that the allegations in

12  the Complaint are not likely to have evidentiary support at the time he filed the Complaint.  *See*

13  Federal Rule of Civil Procedure 11.

14    Plaintiff may also claim in opposition to this motion that he made a couple business trips

15  to California, which somehow creates personal jurisdiction over Defendants.  For example,

16  Plaintiff attended a research conference held in Santa Clara County and he visited a member of

17  IT.com's advisory board, who is also located in Santa Clara County.  However, that is insufficient

18  to establish that his causes of action arise out of any of Defendants' contacts with California.  *See*

19  *U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1065 (N.D. Cal. 2003)

20  (jurisdiction does not attach merely because officer of the company visited California on business

21  trips); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029-1030 (5th Cir. 1983)

22  (finding no purposeful availment by defendant corporation even though officers of the

23  corporation visited the forum state twice).

24    **b.    Plaintiff's contract claim does not arise out of or relate to**
           **Defendants' contacts with California.**

25    Even if Plaintiff could somehow establish purposeful availment, he still has the burden to

26  establish that his breach of contract claim arises out of or relates to IT.com's activities in

27  California.  *See Yahoo! Inc.*, 433 F. 3d at 1205.  According to Plaintiff, the alleged breach

28

1   occurred *in Washington, D.C.* when he was terminated from his employment. Complaint, ¶¶ V,

2   VI; Cordover Dec., ¶ 21. In particular, Mr. Cordover fired Plaintiff for cause on December 12,

3   2006 at IT.com's office in Washington, D.C. Cordover Dec., ¶ 21. In fact, Plaintiff refused to

4   leave IT.com's offices until after the police arrived and escorted him out. *Id.*

5        Any alleged business trips Plaintiff or anyone at IT.com took to California, and any

6   communications Plaintiff had with California residents, do not relate to Plaintiff's termination. In

7   fact, Plaintiff does not even allege that Defendants' contacts with California resulted in his

8   termination. Therefore, Plaintiff's breach of contract claim does not arise from California-related

9   activities, and this Court does not have specific jurisdiction over Defendants. *See Katerndahl*,

10  1996 WL 743800, at * 6 (plaintiff's claim for breach of contract and violation of public policy did

11  not arise from any California activities because the termination occurred in Denmark, not

12  California).

13              **c.    It would be unreasonable for this Court to assert jurisdiction.**

14        It would be unreasonable for California to assert jurisdiction over Defendants. In

15  determining reasonableness, the Ninth Circuit considers seven factors: (1) the extent of the

16  defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of

17  defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state;

18  (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

19  of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and

20  effective relief; and (7) the existence of an alternative forum. *See Brand*, 796 F.2d at 1075.

21        In this case, as set forth fully above, Defendants did not purposefully inject themselves

22  into California's affairs to any extent. Further, there is a tremendous burden on Defendants to

23  defend this action in California. Not only are the defendant corporations based in Washington,

24  D.C., all of their witnesses reside in the Washington, D.C. area. Cordover Dec. ¶ 25. Both

25  defendants are small companies and defending this action in California would require an

26  enormous expense of time and money, both of which are at a premium for Defendants. In

27  addition, there may be a conflict with the sovereignty of Washington, D.C. if the court assessed

28  ITC's and IT.com's conduct under the light of California law. California has no interest in

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO OF P&AS IN SUPPORT THEREOF
CASE NO. 07-CV-5949

1    adjudicating this dispute between a Washington, D.C. employer and its employee, who was a

2    resident of Washington, D.C. at the time of his employment.  Simply because Plaintiff allegedly

3    resided in California prior to his employment and after his termination, does not mean that

4    California has an interest in adjudicating the dispute.

5        The only connection between California and this case is that Plaintiff happens to currently

6    reside in California.  However, the alleged causes of action arose in Washington, D.C. and all of

7    the witnesses reside in Washington, D.C.  It would be far more efficient and effective for Plaintiff

8    to pursue this action in a Washington, D.C. court, which is certainly available to him.

9        Considering all of the factors set forth by the courts, it is clear that California does not

10   have specific personal jurisdiction over ITC and IT.com with respect to Plaintiff's breach of

11   contract claim.  The California Labor Commissioner dismissed Plaintiff's charge for this reason;

12   this Court should do so as well.

13            **2.**    **Plaintiff's tort claims have no connection to California.**

14                **a.**    **Plaintiff's conversion claim.**

15       Plaintiff's complaint alleges two intentional tort causes of action.  The first is for

16   conversion, in which he alleges that he owned a laptop computer and Defendants converted the

17   computer to their own use and benefit.  Complaint, ¶¶ XI, XIII. [3]  Typically, in the context of tort

18   causes of action, the first prong of the specific jurisdiction analysis is whether the defendant

19   "purposefully direct[ed] his activities at the form state." *Yahoo! Inc.*, 433 F.3d at 1206.  The

20   courts apply an "effects" test, which imposes three requirements:  "(1) [the defendant] committed

21   an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant

22   knows is likely to be suffered in the forum state." *Id*. at 1207.

23       Defendants assume the laptop Plaintiff is referring to in his conversion claim is the laptop

24   IT.com owned, but loaned to Plaintiff for his use during and in the scope of his employment with

25   IT.com.  When Plaintiff's employment was terminated, IT.com re-took physical possession of the

26   laptop on December 12, 2006, in Washington, D.C.

27
---
[3] Plaintiff's Complaint, ¶ XIII alleges that Defendants "converted" the laptop to their own use on December 19, 2006,
but Mr. Cordover re-took possession of the laptop when he fired Plaintiff on December 12, 2006.  Cordover Dec., ¶
28   24.

1  California has no connection to Plaintiff's conversion claim.[4]  Even if Plaintiff did own

2  the laptop at issue, it was located in Washington, D.C. and it was in Washington, D.C. where Mr.

3  Cordover re-took possession of it.  The alleged resulting harm was felt in Washington, D.C.

4  because that is where Plaintiff resided at the time.  California's only relationship to the

5  conversion claim is that Plaintiff chose to move to California after the alleged conversion.

6  Plaintiff also cannot establish the second prong of the specific jurisdiction test.  Plaintiff's

7  conversion claim did not arise out of any of Plaintiff's alleged business trips to California or

8  IT.com's contacts with California.  Similarly, the reasonableness prong of the specific jurisdiction

9  analysis weighs heavily against California asserting jurisdiction, as set forth above in the

10  discussion of Plaintiff's contract claims.  *See supra* II, B, 1, c.

11  Accordingly, the facts clearly show that Plaintiff cannot establish that California has

12  specific jurisdiction over IT.com with respect to his conversion claim.

13  ### b.  Plaintiff's fraud claim

14  Plaintiff's second intentional tort claim for fraud arises out of Plaintiff's alleged

15  employment agreement with IT.com on the grounds that Defendants allegedly offered him a three

16  year employment agreement without any intention of performance and with the intent to defraud

17  Plaintiff.  Complaint ¶¶ XVI, XVII.  The key facts surrounding Plaintiff's fraud claim are

18  identical to those surrounding the breach of contract claim.  *See supra* II, B, 1, c.

19  As explained above, IT.com's intentional act of offering Plaintiff employment, which

20  Plaintiff claims included a three-year contract, took place in Washington, D.C.  Further, this

21  alleged act was not expressly aimed at California because it occurred in Washington, D.C., and

22  the alleged agreement was to be performed in Washington, D.C.  Even if the alleged fraud

23  occurred when Mr. Cordover emailed Plaintiff on November 26, 2005, that alone is not enough to

24  confer specific jurisdiction in California.  *See Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1248 (9th

25  Cir. 1984) (mere fact that defendant communicated with plaintiff in the forum state and may have

26  committed a tort in the exchange of correspondence does not confer specific jurisdiction).

27
28  [4] A cause of action for conversion requires that the plaintiff owns or has a right to possess the property; defendant's wrongful act toward the property which interferes with the plaintiff's possession; and harm to the plaintiff.  *See* Restatement (Second) of Torts § 220A-223 (1965)

Plaintiff also cannot establish that his claim for fraud arises out of the Defendants' alleged California activities. IT.com's alleged business activities and Plaintiff's visits to California are unrelated to Plaintiff's fraud claim. Any alleged fraud relating to the term of the employment agreement took place in Washington, D.C. In addition, as set forth above, it would not be reasonable for California to exercise jurisdiction over Plaintiff's claims. *See supra* II.B.1.c.

### 3.    Plaintiff's claim for unpaid wages has no connection to California.

Plaintiff asserts a claim for unpaid wages for the month of December 2006, in addition to resulting waiting time penalties, presumably under California Labor Code Section 203. Complaint ¶¶ IX, X. Because this is a statutory claim, it does not fit neatly into the Ninth Circuit's contract/tort distinction for personal jurisdiction. At least one court has applied the purposeful availment test in an unpaid wage claim. *See Bury v. Northern Outfitters, LLC*, No. 06-3081, 2007 WL 1431958, at *3 (D. Or. May 14. 2007). Under either test, however, Plaintiff cannot establish that California has specific personal jurisdiction over Defendants.

Like all of his other claims, Plaintiff's claim for unpaid wages for December 2006 arises out of his employment with IT.com in Washington, D.C. To find that Defendants purposefully availed themselves of the privilege of doing business in California, Plaintiff must provide evidence of Defendants' actions in California such that they invoked the benefits and protections of its laws. *See Schwarzenegger*, 374 F.3d at 802. As fully set forth above, Defendants did not do business in California and did not engage in any activity that would expect them to be haled into a California court. *See supra* II.B.1.a.

To find that Defendants purposefully directed their conduct towards California, Plaintiff must establish that they committed an intentional act, purposefully aimed at California, that caused harm they knew would likely be suffered in California. *See Yahoo! Inc.*, 433 F.3d at 1207. For this claim, the intentional act would have to be IT.com's alleged failure to pay Plaintiff for the month of December 2006. Considering IT.com and Plaintiff were both residents of the Washington, D.C. area at the time and Plaintiff worked in Washington, D.C. throughout his employment, it cannot be said that this alleged act was purposefully aimed at California. Further, because IT.com knew Plaintiff resided in Virginia at the time, it could not have known that any

1    harm in allegedly not paying Plaintiff's salary would be suffered in California.  The harm, if any,

2    would have been suffered in the Washington, D.C. area.

3          In addition, Plaintiff cannot establish that his claim for unpaid wages arises out of any of

4    Defendants' activities in California.  Plaintiff's claim arises out of his employment in

5    Washington, D.C., and did not arise "but for" Defendants contacts with California.  *See Bury*,

6    2007 WL 1431968, at * 4.  For the factors set forth above, it would be unreasonable for California

7    to exercise jurisdiction over this claim for wages not paid in Washington, D.C. by a Washington,

8    D.C. employer.  *See supra* § II, B, 1, c.

9          Accordingly, like the California Labor Commissioner, this Court should dismiss

10   Plaintiff's claim for unpaid wages for lack of personal jurisdiction.

11   **C.     In the Alternative, This Case Should be Transferred to the District of
         Columbia**

12         This Complaint should be dismissed with prejudice.  However, if the Court declines to

13   grant Defendants' Motion to Dismiss, the Court should transfer venue of Plaintiff's action to the

14   United States District Court for the District of Columbia.  Venue in federal court may be

15   transferred when doing so furthers the interests of justice.  "For the convenience of the parties and

16   witnesses, in the interest of justice, a district court may transfer any civil action to any other

17   district court or division where it might have been brought."  28 U.S.C. § 1404(a).  Pursuant to

18   this statute, the courts consider:  (1) the plaintiff's choice of forum; (2) the convenience of the

19   witnesses and the parties; (3) local interest in the issue; (4) other factors including judicial

20   economy.  *See Flores v. Zale Delaware, Inc.*, No. C07-0539, 2007 WL 4462992, at *2 (N.D. Cal.

21   Dec. 17, 2007).  Assuming the Court decides not to completely dismiss this case, then all of these

22   factors lie in favor of transferring this case to the District of Columbia.

23   **1.     Plaintiff's choice of forum has no weight.**

24         Plaintiff's choice of forum is not entitled to much, if any, weight in this case because his

25   choice of forum is improper.  *See Saleh v. Titan Corp.*, 361 F. Supp. 2d. 1152, 1157 (S.D. Cal.

26   2005) (plaintiff's choice receives less deference "where the action has little connection with the

27   chosen forum"); *Boyd v. Snyder*, 44 F. Supp. 2d 966, 970 (N.D. Ill. 1999) ("When the conduct

28

1   and events giving rise to the cause of action did not take place in the plaintiff's selected forum,

2   the plaintiff's preference has minimal value even if it is his home forum.") (quotations and

3   citations omitted).  As discussed above, all of the operative facts of Plaintiff's complaint arose in

4   the Washington, D.C. area and have no significant connection to California.  Further, Defendants

5   are both residents of Washington, D.C.  Plaintiff could have and should have brought this action

6   in the District of Columbia.

7   **2.    Washington, D.C. is more convenient for the parties and witnesses.**

8       Plaintiff is the only principal witness to his contract negotiations with, and his

9   performance at, IT.com who resides in California.  All of the other principal witnesses reside in

10  the Washington, D.C. area:

11      (1)    Mr. Cordover is located in the Washington, D.C. area, and will testify regarding

12  the discussions he had with Plaintiff regarding his employment with IT.com, Plaintiff's

13  performance at his job with IT.com, Plaintiff's termination, and the fact that IT.com owned the

14  laptop computer at issue in Plaintiff's conversion claim.

15      (2)    Mr. Jason Pratt, an IT.com employee, is located in the Washington, D.C. area, and

16  will testify concerning Plaintiff's job performance and the events surrounding his termination.

17      (3)    Mr. Andy Liu, an IT.com employee, is located in the Washington, D.C. area, and

18  will testify concerning Plaintiff's job performance and the events surrounding his termination.

19      (4)    Mr. Seth Green, an IT.com employee, is located in the Washington, D.C. area, and

20  will similarly testify concerning Plaintiff's job performance and the events surrounding his

21  termination.

22      (5)    Ms. Coco Palomeque, the Secretary of IT.com, is located in the Washington, D.C.

23  area, and will testify concerning Plaintiff signing the Restricted Stock Agreement, and his

24  presence in the Washington, D.C. area during many weekends from December 2005 to December

25  2006.

26      "The relative convenience to the witnesses is often recognized as the most important

27  factor to be considered in ruling on a motion under § 1404(a)."  *Saleh*, 361 F. Supp. 2d at 1160.

28  If this case proceeds in the Northern District of California, all five of the above listed witnesses

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO OF P&AS IN SUPPORT THEREOF
CASE NO.  07-CV-5949

1   would be required to spend at least one day traveling to California for trial, at least one day spent

2   testifying, and then another day traveling back to Washington, D.C.  Additionally, IT.com is a

3   small start-up company with only a handful of employees.  It would be detrimental to IT.com's

4   ongoing business activities to have its CEO, its Secretary, and three other employees travel all the

5   way to California to testify about facts that occurred in the Washington, D.C. area.  It is much

6   more convenient for all the parties involved to have this case tried in the District of Columbia.

7                    **3.      The Northern District of California Has No Interest in These Claims**

8          This case involves claims against a Washington, D.C. employer, brought by a former

9   employee who resided in the Washington, D.C. area during his employment.  The District of

10  Columbia clearly has a superior interest in resolving Plaintiff's claims.  California has no

11  connection to this dispute save that Plaintiff resided in the state before he worked for IT.com, and

12  after he was terminated from IT.com.

13                    **4.      Judicial Economy Favors Transfer of Venue**

14         The efficient administration of justice and judicial economy also dictate that Washington,

15  D.C. is the better forum for this action.  As set forth above, the witnesses are located in

16  Washington, D.C., both defendants are located in Washington, D.C.  Further, the docket

17  congestion in the Northern District of California is far greater than that in the District of

18  Columbia.  Declaration of Michael D. Weil, Ex. B.  For example, in the twelve month period

19  ending March 31, 2007 (the most recent statistics available), there were 8,294 cases filed and

20  9,010 cases pending in the Northern District of California, while there were only 2,768 cases filed

21  and 4,180 cases pending in the District Court for the District of Columbia. Thus, the relative

22  docket congestion in the Northern District of California far exceeds that in the District of

23  Columbia, and this factor also weighs in favor of transferring the action to the District of

24  Columbia.

25         Accordingly, both in number and in substance, the factors supporting transfer of venue

26  greatly outweigh any arguments against such a transfer and this Court should exercise its power

27  under 28 U.S.C. §1404(a) to transfer this action to the proper forum.

28

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO OF P&AS IN SUPPORT THEREOF
CASE NO.  07-CV-5949

IV.    **CONCLUSION**

For all the foregoing reasons, defendants ITC and IT.com respectfully request that the Court dismiss this action, with prejudice, for lack of personal jurisdiction. In the alternative, Defendants respectfully request that the Court transfer the action to the United States District Court for the District of Columbia.


Dated: January 7, 2008

JULIE A. TOTTEN
MICHAEL D. WEIL
ORRICK, HERRINGTON & SUTCLIFFE LLP


/s/ Michael D. Weil
_____
Michael D. Weil
Attorneys for Defendants
Institutional Trading Corporation and IT.com

OHS West:260357935.5

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO OF P&AS IN SUPPORT THEREOF
CASE NO. 07-CV-5949